# JANUARY, 1943

## ALLYN R. CLINE v. THE INSURANCE EXCHANGE OF HOUSTON.

No. 7933. Decided October 28, 1942.
Rehearing overruled January 6, 1943.
(166 S. W., 2d Series, 677.)

176

*Elledge & Elledge,* of Houston, for petitioners.

The In-and-Out Rule of the exchange is an agreement by those becoming members not to engage in the mortgage business and certain other businesses and hence constitute a restriction in those businesses, and does, as a matter of law, constitute an actionable combination to injure nonmembers of the exchange. Potomac Fire Ins. Co. v. State, 18 S. W. (2d) 929; Gaddy v. Republic Ins. Co. 129 Texas 481, 103 S. W. (2d) 141; North Texas Gin Co. v. Thomas, 277 S. W. 438.

*Wood, Gresham, McCorquodale & Martin,* of Houston, for respondent.

The court correctly entered judgment for the defendant (exchange) because plaintiff failed to establish any damages flowing from acts of defendant, and that there were no continuing or future damages. Collins v. Panhandle Natl. Bank, 75 Texas, 254, 11 S. W. 1053; Olcott v. Squires, 144 S. W. 314; Simpson v. Whitesboro Natl. Bank, 120 S. W. (2d) 462.

MR. JUSTICE SHARP delivered the opinion of the Court.

This case presents the question of whether a rule adopted by The Insurance Exchange of Houston, defining the eligibility of its members, violates the anti-trust statutes of Texas, Articles 7426, 7427, 7428, and 7437, Revised Civil Statutes of Texas.

Allyn R. Cline, an insurance agent, filed this suit against The Insurance Exchange of Houston, an incorporated association of insurance agents, and certain individual agents, for damages in the sum of $20,000.00 and for an injunction, alleging that the In-and-out Rule adopted by the Exchange, which provided that no member of the Exchange might represent an insurance company which had as its agent a nonmember of the Exchange, was a violation of the anti-trust law, and constituted a combination to injure him and other nonmembers insurance agents sued. At the conclusion of the evidence the of the Exchange. A nonsuit was taken as to the individual trial court, upon motion of the Exchange, dismissed the jury and rendered judgment for the Exchange. The judgment of the trial court was affirmed by the Court of Civil Appeals. 154 S. W. (2d) 491. Because of the importance of the question presented, a writ of error was granted.

For a more detailed statement of the pleadings and contentions of the parties, we refer to the opinion of the Court of Civil Appeals.

Petitioner conducts a real estate mortgage business in Houston, and also solicits and writes various kinds of insurance, other than life insurance. Respondent is an incorporated trade association, composed of local recording insurance agents who devote their full time to soliciting and writing fire, casualty, and surety insurance. Life insurance is not involved in this case in any way. At the time of the trial there were about 200 insurance agents in Houston, of which 142 were members of the Insurance Exchange and approximately 60 were not; and

there were about 100 insurance companies doing business in Houston. Some of the larger agencies, writing all forms of insurance, were not members. Neither the insurance companies nor their general agents are members of the Exchange. Petitioner is not now, and has never been, a member. He entered the insurance business early in 1936, and was licensed by the Insurance Commission before the In-and-out Rule was submitted to the Exchange for adoption, and about six weeks before such rule became effective. In so far as the rule was concerned, petitioner could have become a member of the Exchange at any time after he was licensed by the Insurance Commission, and prior to April 1, 1936, when the rule became effective, regardless of his connection with the mortgage loan business, and could have remained a member thereafter. He therefore had six weeks in which to decide whether he would become a member of the Exchange; during which time he could have obtained "plants" from insurance companies, and the eligibility of agents representing those companies would not have been affected in any way if their companies had "planted" with Cline prior to April 1, 1936.

The In-and-out Rule is Section 2, Article V, of the constitution of the Exchange, and, omitting unnecessary portions, reads as follows:

"Section 2. Those who are ineligible to membership:

"In furtherance of the objects and purposes hereinbefore stated, it is deemed advisable to declare ineligible to membership in this Exchange:

"(a) Those who are the agents of any fire, casualty or surety insurance company, including 'Underwriters' of same, who, or whose General Agent or Manager, has an agent within the membership jurisdiction of this Exchange, appointed after April 1, 1936, who is not a member of this Exchange.

"(b) Those who are the agents of any fire, casualty or surety insurance company, including 'Underwriters' of same, which is a member of a group or fleet of companies under the management or control of another company or manager, who, or whose general agent or manager, has an agent or agents within the membership jurisdiction of this Exchange, appointed after April 1, 1936, who is not a member of this Exchange * * *.

\* \* \* \* \* \* \*

"(f) Those who accept from or place fire, casualty, surety, or allied lines of insurance business with agents within the membership jurisdiction, who are not members of this Exchange.

"(g) Any agency owned wholly or in part, controlled by or affiliated with a mortgage, loan, bank or trust company or other finance concern or real estate building or sales concern. This paragraph shall not apply to those who were members of this Exchange prior to April 1, 1936."

The effect of the rule is to divide the approximately 200 insurance agents in Houston into two groups, members of the Exchange and nonmembers. Subsections (a) and (b) prohibit a member from representing an insurance company which employs a nonmember as soliciting agent within the membership jurisdiction of the Exchange. Subsection (f) prohibits a member from accepting from or giving business to nonmembers,—that is, from joining with a nonmember in writing a policy and dividing the commission earned between them. Subsection (g) prohibits a member from engaging in the loan, mortgage, bank or trust business.

Some of the trade practices objectionable to the Exchange, and which it attempts to prevent by the adoption of the In-and-out Rule, are summarized by the respondent as follows:

"(1) Coercion of premiums is made illegal and against publice policy by the insurance laws of Texas. See Article 5062a, Sec. 5, R. S. 1925.

"(2) If the terms of the loan are made more favorable by the lender as an inducement to get the insurance business of the borrower, such amounts to rebating, is illegal, and is prohibited by Article 5053, R. S. 1925, which forbids rebating of premiums.

"(3) The necessities of the borrower and the importance of getting a loan greatly overshadow the importance to him of whether his insurnace business is placed with the agent and carrier he prefers.

"(4) A mortgage concern gets large numbers of copies of policies with the expiration dates thereon, and if the mortgage concern is controlled by an insurance agent, such agent can use this information to raid the business of his competitors.

Expiration dates of policies are the "life blood' of an insurance agency and constitute one of its most valuable assets.

"(5) Operation of a mortgage loan concern and an insurance agency together tends to increase the evil of over-insurance."

The dominant purpose of the In-and-out Rule is to prevent any one engaged in the mortgage, loan, banking, or finance business from selling fire, casualty, or indemnity insurance. The practice of writing such insurance as a side line by such concerns is condemned by Section 5 of Article 5062a, Vernon's Annotated Civil Statutes.

■ Petitioner complains that the rule prevented him from getting contracts of agency to represent a number of insurance companies, some of which pay excess rates to their agents; because the rule compels insurance companies and their general agents to choose whether they will select as their soliciting agents persons who are members of the Exchange or those who are not members. It is plain that if the rule is adhered to, a company may not employ both members and nonmembers as its soliciting agents. Petitioner alleged that if it had not been for the rule he would have been appointed soliciting agent for several companies, but that they refused to "plant" with him because he was not a member of the Exchange. In the insurance business the terms "plant" and "planted" mean that a local agent is authorized to solicit business and to countersign policies for a company. As we understand it, many of the 100 insurance companies doing business in Houston do not plant with members of the Exchange, but plant with nonmembers,—that is plant outside the Exchange. Petitioner at the time of trial represented eight such companies, at least one of which paid him excess commissions.

Petitioner contends that the In-and-out Rule violates Article 7426, because (1) it lessens competition in the insurance business, by preventing nonmembers from engaging in the insurance business; and (2) because it increases the cost of insurance to the public, by giving the Exchange such control over the business that it can force the companies to pay higher commissions; and the amount of commissions paid is an important factor which is taken into account by the Insurance Commission in fixing maximum insurance premiums. He further contends that the rule constitutes a conspiracy in restraint of

trade, prohibited by Article 7428; that such rule is arbitrary, unreasonable, and discriminatory, because it does not apply to members who became such prior to April 1, 1936, when the rule became effective; and that it constitutes an agreement not to engage in the mortgage, loan, bank or trust business, in violation of Section 7 of Article 7426.

Article 7426 and 7428, in so far as here pertinent, read as follows:

"Art. 7426. A 'trust' is a combination of capital, skill or acts of two or more persons, firms, corporations or associations of persons, or either two or more of them for either, any or all of the following purposes:

"1. To create * * * or carry out restrictions * * * in the free pursuit of any business authorized or permitted by the laws of this State.

"2. To fix, maintain, increase or reduce * * * the cost of insurance * * *.

"3. To prevent or lessen competition in * * * the business of insurance * * *.

"4. To fix or maintain any standard or figure whereby the * * * cost * * * of insurance * * * shall be any any manner affected * * *.

"5. * * * to preclude a free and unrestricted competition among themselves or others in the * * * business of insurance * * *.

          *     *     *     *     *     *     *

"7. To abstain from engaging in or continuing business * * * within the State of Texas, or any poortion thereof."

"Art. 7428. Either or any of the following acts shall constitute a conspiracy in restraint of trade:

"1. Where any two or more persons, firms, corporations or associations of persons, who are engaged in buying or selling any article of merchandise, produce or any commodity enter into an agreement or understanding to refuse to buy from or sell to any person, firm, corporation or association of persons, any article of merchandise, produce, or commodity."

■ Petitioner may not be heard to complain that the rule is arbitrary, unreasonable, and discriminating because it does not apply to members joining the Exchange prior to April 1, 1936. He is not a member of the Exchange, and is not seeking to become one by this suit. Therefore he is not injured by the fact that some members may engage in the mortgage loan business and others may not. The rule when adopted was not made retroactive. As above state, petitioner had the privilege of becoming a member prior to April 1, 1936, and had he done so he could have remained a member and continued his mortgage business.

In charging conspiracy to violate the anti-trust laws, petitioner does not contend that the insurance companies, or their general agents, or the officers and other members of the Exchange, joined in the conspiracy; and he seeks damages and an injunction against the Exchange only. As originally filed, petitioner's petition made certain individual members of the Exchange parties to the suit, but during the trial he dismissed all defendants save and except the Exchange. Counsel for petitioner stated to the court, as shown by this record, that there had not been sufficient evidence produced to go to the jury on the issue of the existence of a conspiracy, or any act growing out of a conspiracy, on the part of the defendants. In view of the admissions made, the question for this Court to decide is reduced to the point whether the rule here under consideration per se violates the anti-trust statutes.

The rule on its face does not violate the anti-trust statutes. We are unable to comprehend how the rule can "prevent or lessen competition" or "preclude a free and unrestricted competition" among the members and nonmembers of the Exchange in the solicitation of insurance. It does not interfere with the employing by insurance companies of as many soliciting agents as they wish, nor with the making of their policies available to all who wish to purchase them. The Exchange is a voluntary association, and those who wish to comply with the rules and regulations of same may become members thereof. Insurance companies are not members of the Exchange, and they are not bound by the rule under consideration. They may employ or tender employment to any licensed agent in the State, and those accepting appointments may solicit in Houston free from interference by members of the Exchange, in so far as the rule is concerned. The rule merely prohibits a member

from accepting an appointment from a company planting outside the Exchange, and compels a member to choose whether he will refuse to accept such appointment and remain in the Exchange, or whether he will accept such appointment and withdraw from the Exchange; which he is free to do without punishment or penalty.

■ A voluntary association has the power to enact rules governing the admission of members and prescribing certain qualifications for membership; and such rules will be enforced, unless they are against good morals or violate the laws of the State. St. Louis S. W. Ry. Co. v. Thompson, 102 Texas 89, 113 S. W. 144, 19 Ann. Cas. 1250; Sheehan v. Levy (Com. Appls.) 238 S. W. 900; Harris v. Thomas (Civ. Appls.), 217 S. W. 1068, 1077; Manning v. San Antonio Club, 63 Texas 166, 51 Amer. Rep. 639; Brown v. Harris County Medical Society (Civ. Appls.), 194 S. W. 1179. Such an association has the right, by all legitimate and legal means, to promote its aims and purposes and advance the best interests of its members. If the members of such an association, without malice or evil intent, adopt certain rules to serve some legitimate purpose of their own, they can enforce same, so long as no definite legal right of others is violated. Harris v. Thomas, supra; Dels v. Winfree, 80 Texas 400, 16 S. W. 111, 26 Amer. St. Rep. 755, Id. 6 Texas Civ. App. 11, 25 S. W. 50; Booker & Kinnaird v. Louisville Board of Fire Underwriters et al, 188 Ky. 771, 224 S. W. 451, 21 A. L. R. 531; Gregg v. Massachusetts Medical Society, 111 Mass. 185, 15 Amer. Rep. 24.

The rule itself does not attempt to "fix, maintain, increase or reduce" the cost of insurance. It does not even remotely refer to commissions. It is true that the rule does prohibit a member of the Exchange from "engaging or continuing" in the mortgage loan business, if he became a member after April 1, 1936; but this restriction applies only to members, and not to petitioner. However, we do not believe that the rule comes under the condemnation of Section 7 of Article 7426. Members of the Exchange do not obligate themselves in any way that they will not enter the mortgage, loan, or banking business, or that they will not represent companies which do not plant with members of the Exchange. There is no contract or agreement to that effect. They may choose to remain members of the Exchange and comply with its rules, or to withdraw from the Exchange and sell insurance along with the loan business free from interference by the rules of the Exchange.

The evidence introduced on the trial fails to show any violation of the law on the part of the Exchange. To hold that the Exchange or its members, by virtue of the rule, could or might violate the anti-trust laws, would be based upon mere conjecture. This Court will not assume that the Exchange and its members will adopt methods for the carrying on of its business in clear violation of the anti-trust laws. State v. Standard Oil Co., 130 Texas 313, 107 S. W. (2d) 550, 557; Nevels v. Harris, 129 Texas 190, 197, 102 S. W. (2d) 1046, 109 A. L. R. 1464.

We have carefully considered this record, and we find no evidence that would justify this Court to reverse the judgments of the lower courts. Therefore the judgments of the trial court and of the Court of Civil Appeals are affirmed.

Opinion delivered October 28, 1942.

Rehearing overruled January 6, 1943.