## COLE v. MISSOURI–KANSAS–TEXAS R. CO. OF TEXAS.

### No. 13471.

Court of Civil Appeals of Texas. Dallas.

Jan. 28, 1944.

Rehearing Denied March 3, 1944.

Cox & Cox and R. M. Carter, all of Sherman, for appellant.

G. H. Penland and Touchstone, Wight, Gormley & Touchstone, all of Dallas, and Freeman & Wolfe, of Sherman, for appellee.

YOUNG, Justice.

The suit was by Mrs. Jessie Cole, surviving wife, and the three minor children of Ernest Cole, deceased, alleging that the latter's fatal injuries resulted from negligence on part of appellee Railroad; the father and mother becoming parties by way of intervention. At conclusion of plaintiff's testimony in chief, defendant interposed motion for instructed verdict, whereupon the court discharged the jury, sustained the motion, with judgment final against all claimants, from which Mrs. Cole and children alone have directed an appeal.

At 5:50 o'clock on the afternoon of May 3, 1941, Ernest Cole, an employe of the Frisco Railroad at Fort Worth, there boarded appellee's "Bluebonnet" passenger train on a trip to his home in Denison, traveling on a valid pass. Conductor Walton recalled checking Cole's pass, and seeing him in both the combination coach and dining car before reaching Whitesboro, but not thereafter. Beyond Whitesboro and near Hagerman (Deaver Switch), around 2 o'clock the next morning, a freight train crew found Cole lying in the

grass a few feet to the left or west of appellee's main track. He was suffering from grave injuries to head, chest, and other parts of body; was promptly taken to a Denison hospital where he died twelve hours later. Roy Brown, of the train crew finding Cole, stated the latter was unable to answer questions, except to say "Bluebonnet"; of finding his purse and Frisco pass just at the end of the railroad ties; the grass was mashed or rolled down at the place, which was about sixty feet north of Deaver signpost. Some cigarettes, matches and a broken pencil were picked up at the spot (left or west of the track). Mrs. Cole testified to questioning her husband at the hospital about the cause of his injuries. She said: "And then I asked him how come him in a car wreck and he said he wasn't in a car wreck, that he was on the train coming home and fell off." Aside from these words of deceased, any explanation surrounding the manner of his fall from the train and defendant's alleged negligence in such connection must depend wholly upon circumstantial evidence.

Appellant's specifications of negligence charged as proximately causing the death of Ernest Cole are, briefly, (a) that defendant negligently left the vestibule doors between a baggage car and the first passenger coach of the train open from Whitesboro to Denison; (b) negligently left said vestibule doors open in the nighttime at a point near Deaver Switch; (c) similarly left the front car door of the first passenger coach unlocked while the train moved from Deaver Switch 3,000 feet northward toward Denison; (d) permitted deceased to go into and upon an open vestibule platform between said first passenger coach and the baggage car while the train was traveling in excess of thirty miles per hour at a point near Deaver Switch; (e) appellee negligently allowed its roadbed to become dilapidated and in bad repair in vicinity of aforesaid switch.

On trial, the following facts were either agreed to or not disputed: Appellee's train crew consisted of engineer, fireman, conductor and brakeman; no porter aboard. The route was through Whitesboro, Sadler, Deaver Switch, Hagerman and Denison. The train had six coaches to Whitesboro, there picking up two coaches from Wichita Falls line. On leaving Whitesboro it was made up as follows: engine and tender, two baggage cars, Wichita Falls coach, combination coach and baggage, chair car, diner, and two pullmans, provided throughout with vestibule doors. The entire train was 645 ft. long, engine and tender 85 ft. long, and average car length 70 ft. As already stated, deceased was found a short distance north of Deaver signpost, on the west side of defendant's main track. A switch takes off from the east or right side at Deaver, the signpost marking the north end thereof; the main track at that point running in a northerly and southerly direction. Certain other measurements in the vicinity were also stipulated: the distance from the south passenger track frog to Deaver signpost is 880 ft., from the south switch stand on the railroad track to Deaver signpost is 1,063 ft., and from this point up the track to where Mr. Cole was found, 1,123 ft.

Circumstantial evidence mainly relied upon for issues of negligence center around the north door of the Wichita Falls coach and vestibules; being presented, if at all, in testimony of plaintiff's first witness, conductor Walton, in charge of the train; and in this connection we note the unrefuted statement in appellee's brief that passenger brakeman Brigham was in attendance upon the court under plaintiff's subpoena, but was not called to testify, his oral deposition having previously been taken at instance of complainants. The record testimony of conductor Walton (narrative form) is not altogether clear in some parts, but was, in substance: The forward car abutting the second baggage car was the Wichita Falls coach, the north end of which Walton boarded on leaving Whitesboro, unlocked the north coach door, entered, relocked it, working his way to the rear of the train; also at this point getting orders to take the siding at Deaver Switch for No. 25, southbound passenger train; witness did not close the north vestibule doors when re-entering train at Whitesboro, protecting the passengers, as he said, by locking the north door. The train then ran to Sadler, four or five miles short of Deaver Switch, for a stop, with Walton at the rear end. There, brakeman Brigham alighted from the north end of the Wichita Falls coach and east or right vestibule door, went to the engine so as to be in position for the Deaver Switch operation, leaving the particular vestibule door open for later entry. At Deaver, Brigham got off the engine and set the switch, the train running onto the switch track, right or east of main line some 150 ft., for south-

bound train to pass in safety, brakeman remaining near switch stand, witness observing this from right vestibule door of rear pullman; Walton also opening the left or west vestibule door to observe the passing southbound train, seeing no one on the ground except the brakeman while the train stood on the siding and as they backed out of the switch. He then went to the right side, saw Brigham set the switch, and as the train moved up the main line past the switch point, saw him swing on at the front end of Wichita Falls coach through open vestibule door. The train was then moving four or five miles per hour, and from twenty to twenty-five miles per hour when passing Deaver signpost; the train proceeding on to Denison without stop.

Walton further testified that he went through the train once or twice between Deaver and Denison but noticed no vestibule doors open; that there were a good many passengers aboard, and the only way he knew for passengers to get off between stations was through a window or by opening a vestibule door; that any man could open such doors, passengers sometimes doing so, but not often. He described the manner of opening vestibule doors. On a passenger coach, it was necessary to pull up the trap platform and open the door back against such platform, using a reverse method in closing. On the pullmans, the door opened first, pulling the platform and trap door up and back against the door, with similar reverse process on closing. Neither coach nor pullman vestibule doors could be easily opened or closed from the outside. From the record, no one on the train knew of Cole's disappearance, Walton hearing of it the next morning. Relative to the north door of Wichita Falls coach, although brakeman Brigham made use of it at least twice beyond Whitesboro and before passing Deaver Switch, no positive testimony indicates that in doing so, he left this door unlocked. Walton also stated that no rule or custom of defendant would be violated by leaving the particular vestibule doors open, provided the front coach door was locked; and to go from the combination coach to north end of Wichita Falls car, it was necessary that one open the door to the baggage compartment (lighted but empty—no seats), go through that space to the south end of the Wichita Falls coach, traverse same through the north coach door, and onto the outside vestibule platform. Here it was, as plaintiff seeks

to establish from circumstances, that Ernest Cole fell from the train; charging his fatal injuries to be the result of defendant's negligence in permitting the north door of the Wichita Falls coach and vestibules respectively to remain unlocked and open.

The only direct evidence bearing upon this unfortunate occurrence is that deceased was riding on the train and fell off. The place and manner of his exit, whereby fatal injuries were sustained, are wholly unexplained except by attendant circumstances hereinabove outlined and described. The question decisive of this appeal is whether, under the evidence adduced, submissible issues are there presented involving defendant's negligence proximately causing same. Deceased was never seen in the forward part of the Wichita Falls coach, though he could rightfully have gone there; and from testimony of conductor Walton, a further independent inference may be drawn that north outer vestibule doors of said car were open. However, positive testimony is to the effect that the north coach door was locked, and if an inference cannot be indulged that brakeman Brigham left it unlocked, then the fact of open vestibule doors becomes immaterial. Here, the following state of the record is significant: Under plaintiff's theory, the place of deceased's fall was some 1,000 ft. up the track from where Brigham had stepped upon the same vestibule platform, the train moving toward and passing Deaver signpost within a minute thereafter. Brigham, therefore, was the only person having vital knowledge with respect to the matters at issue. His direct evidence on the point being available but not used, we think no inference can be indulged that aforesaid coach door had been left unlocked by him; on the other hand, would not an opposite inference have been warranted?

We appreciate appellant's difficulty in the matter of proof, but as remarked by Judge Williams in a like situation (Texas & P. R. Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049, 1052), "if the fireman's testimony would have made out a case for the plaintiffs when they could produce no other, they should have called him." An inference of fact should not be drawn from an uncertain premise. 17 T.J. p. 247; 31 C.J. S., Evidence, § 116, p. 727. Considering all testimony most favorable to plaintiff, we think the following conclusions are unavoidable: (1) Plaintiff's chain of circum-

stances (if not pyramided) is so weak and attenuated as to raise no more than a mere surmise or suspicion of the existence of the facts sought to be established; Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; or (2) the circumstances of negligence as charged lack support in direct evidence. "Where there are no eye-witnesses, proof of negligence on part of a railroad company and of care on part of a person killed at a crossing may be established by circumstances, * * * but the circumstances themselves must be shown by direct evidence, and cannot be inferred from other circumstances. It is not admissible to go into the domain of conjecture, and to pile one presumption upon another." Missouri Pac. R. Co. v. Porter, 73 Tex. 304, 11 S.W. 324, 325.

Search the instant facts as we may for a rational explanation of the tragedy there portrayed, yet the examiner is left to conjecture and supposition as to whether, somehow, Cole gained access to the platform in question and there fell, or suffered a like misfortune consequent upon his own act in opening some other vestibule door. The following excerpt from Byerly v. Consolidated L., P. & I. Co., 130 Mo.App. 593, 109 S.W. 1065, adopted in Texas Pac. F. & S. Co. v. Hall, Tex.Civ.App., 101 S.W.2d 1050, 1052, is quite pertinent: "Where the ultimate fact is not susceptible of direct proof, its existence must directly follow as a reasonable conclusion from its basic facts and circumstances, and it may be stated as an axiomatic rule that whenever court or jury are left by the evidence in a situation where, in order to find the ultimate fact alleged, they must piece out the facts adduced with conjecture or supposition, the plaintiff must be held to have failed in his proof. Where the evidence shows the injury might have been caused by the negligent act, but, in its aspect most favorable to plaintiff, is just as consistent with the inference that the injury might have been produced by another cause, to send the case to the jury would be to accord them the right to make an arbitrary choice between equally probable but unproved conclusions, and thus the verdict, if for the plaintiff, would be based not entirely on evidence, but in part on mere speculation and conjecture. This would mean a reversal of the rule imposing the burden of proof on the plaintiff, since the defendant, in order to prevent the jury from making him the victim of conjecture, would be forced to assume the burden of showing that his negligence did not produce the injury."

Appellant complains of the court's action in not permitting Walton to answer the following question on direct examination: "Now, in the event a passenger had opened a vestibule door and gotten off, that would have left the vestibule or trap door open?" The witness had already testified to all facts material to the inquiry as he knew them, and what his answer would have been is not shown; hence no injury is apparent and the point is overruled. And the trial court having rendered, under the record facts, a correct judgment, there was no error in the rendition thereof without formality of an actual jury verdict upon peremptory instruction. American Surety Co. v. Hill County, Tex.Civ.App., 254 S.W. 241; affirmed by Sup.Ct., 267 S. W. 265; Adams v. Houston Nat. Bank, Tex.Com.App., 1 S.W.2d 878; Houston v. Holmes, Tex.Civ.App., 262 S.W. 849; Zachary v. City of Uvalde, Tex.Com.App., 42 S.W.2d 417; Cline v. Insurance Exchange, Tex.Civ.App., 154 S.W.2d 491; affirmed by Sup.Ct., 140 Tex. 175, 166 S.W. 2d 677.

The judgment under review is affirmed.