CONSOLIDATED FORWARDING COM-
PANY, Inc., Appellant,

v.

UNION TRUCK DEPOT, INC., Appellee.

No. 15992.

Court of Civil Appeals of Texas.

Dallas.

March 30, 1962.

Rehearing Denied April 20, 1962.

Phinney, Hallman & Pulley, and Wm. E. Livingstone III, Dallas, for appellant.

Clark, Thomas, Harris, Denius & Winters; Wallace A. McLean and James H. Keahey, Austin, for appellee.

WILLIAMS, Justice.

The opinion heretofore rendered in this case is withdrawn and the following substituted therefor.

Union Truck Depot, Inc. brought this suit against Consolidated Forwarding Co. Inc. seeking recovery of a portion of a freight damage claim which had been paid by Union Truck Depot, Inc. to the Dow Chemical Company in Freeport, Texas. The shipment of merchandise originated in Ohio, and was transported by Consolidated to Dallas, Texas where it was delivered to Red Arrow Freight Lines and delivered by that company to Union at Houston, Texas who delivered the shipment to its final destination at Freeport, Texas. Although the shipment was received in apparent good order, Dow Chemical Co. later filed a concealed damage claim against Union. Following investigation Union paid the claim and then sought the recovery of pro rata portion thereof from Consolidated. Plaintiff alleged that it was a party to an oral interchange agreement with Consolidated and Red Arrow pursuant to which agreement the parties were to share a pro rata liability on concealed damage claims, based on the percentage of revenue each was entitled to receive for transporting a shipment of this type.

Following trial before the court and a jury, the trial judge submitted one special issue to the jury inquiring whether or not the damage involved in this claim was actually of a concealed nature. The jury found that the damage was concealed. On this verdict judgment was entered for plaintiff. Simultaneously defendant's motion for judgment on the verdict and, in the alternative, for judgment notwithstanding the verdict, was denied.

Appellant contends that (1) there is no evidence of probative force to support the finding of the vital fact that there was an agreement between appellant and appellee to share pro rata responsibility for payment of concealed damage claims; (2) that there is no legal basis alleged or proved by appellee to support the judgment of the trial court; and (3) that there is no proper measure of damages either alleged or proved by appellee.

■ In our consideration of appellant's first point we are governed by the rules announced by Chief Justice Calvert of our Supreme Court in his Article entitled "No Evidence" and "Insufficient Evidence" points of error, 38 Tex.Law Rev. 362 wherein he states:

"'No Evidence' points must, and may only, be sustained when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact."

■ Appellant says that there is no evidence to support the finding of the vital

fact that there was an agreement between appellant and appellee to share pro rata responsibility for concealed damage claims. If a review of the entire record in this case reveals any evidence to support the vital fact of the agreement we must overrule appellant's points. Moreover, the evidence will be viewed in the light most favorable to the judgment. 4 Tex.Jur.2d 337. We have carefully examined the entire record in this case and find an abundance of testimony to support appellee's contention of an agreement between the shippers to share pro rata responsibility on concealed damage claims. In answer to request for admission of facts appellant admitted it regularly interchanged shipments with Red Arrow; that such interchange operations were conducted pursuant to both oral and written agreements between appellant and Red Arrow; that by the terms of such agreement, shipment could originate on appellant's lines, be interchanged with Red Arrow and continue to destination on a third carrier, such as appellee's line; that under such a haul as that described, each of the three carriers were, pursuant to such agreement, sharing the total shipping charges received in the same ratio as the mileage of each bore to the total distance of shipment transported; that pursuant to such agreement appellant originated a shipment in Ohio, destined for the Dow Chemical Co. at Freeport, Texas; that appellant transported such shipment and delivered it to Red Arrow in Dallas; that the total freight charges for such haul were pro-rated between appellant, appellee and Red Arrow as follows: Appellant, 56%; Red Arrow, 29%; and appellee, 15%; that the appellant is a member of the National Freight Claim Council of the American Trucking Association, Inc., and has adopted such council rules and regulations which included, Rule 20 providing: "Claims for loss from a package or from damage to freight discovered after delivery to consignee, and apparently of a concealed nature shall be pro-rated on a revenue basis, (unless otherwise mutually agreed upon by the carrier

involved or provided for in these rules) without regard of handling at intermediate points; provided investigation discloses lawful basis for payment." There is testimony in the record appellee delivered the shipment to Dow Chemical Company and was later presented with a claim for concealed damage which, after investigation by appellee, was paid in full and a demand then made upon appellant for its pro rata share of the claim based upon mileage revenue. Appellant denied that it was obligated to pay this claim. It was undisputed in the record that appellee was a member of the American Trucking Association Inc. and subscribed to the Association's rules and regulations, including Rule 20 referred to above.

Charles C. Feldman, appellant's traffic manager, testified that:

"A No. There are concealed damage claims filed by all carriers.

"Q You handle these day in and day out?

"A I don't, but our company does, our claims manager who will later testify. I don't handle damage claims at all.

"Q State to me what procedure your company follows?

"A On concealed damage they follow a procedure if it is actually concealed damage the carriers are subject to pro rate that, but it must be definite it is concealed damage, and they honor those claims.

"Q They honor a claim on a pro rata basis if it is proven it is concealed damage?

"A If it is proved it is concealed damage.

"Q You will agree with me what we are talking about now, it comes down to whether this damage was concealed or not?

"A That seems to be the question, but I don't think it is concealed. * * *

**696**

"Q Did you know what procedure your company followed in handling this claim or did you go blindly into it?

"A No, I didn't go blindly into it. I wanted to be sure we had done the damage before I was ready to tell anybody to pay anything; we wanted to be sure we had done the damage, and then we would pay the claim. If we had done the damage to this freight that was sent to Freeport, if Consolidated Forwarding Company broke it or injured it or done something to it, we wouldn't ask anybody to help us pay. We pay it ourselves if we had done it.

"Q On what basis does your company handle claims where you cannot tell who did it?

"A. That is concealed damage claims if nobody can tell who done it.

"Q I am asking you on what basis does your company handle claims where you cannot tell who did it?

"A Apparently they would have to handle it on a pro rata basis if it couldn't be proven who done it.

"Q The very same basis we are asking for under this lawsuit?

"A You are asking everybody to pro rate the shipment on the strength that you say you don't know who done it.

"Q Would you explain to this jury what is meant by pro rating the shipment?

"A That means if there is (sic) a dollar to divide and one carrier got fifty cents and another twenty five cents and another twenty five cents, whatever the amount of the damage is one would pay fifty percent and another twenty five percent and another twenty five percent. That is what we mean."

Edward P. Englert, appellant's claim manager testified that appellant was a member of the American Trucking Association and that the rules of that association provide for the apportionment of claims for loss and damage between carriers, member-carriers of the National Freight Claim Council of the American Trucking Association; that appellant was a party to those rules.

■■■ It is to be observed from this testimony that while there is ample evidence that both carriers involved were members of the same association and bound by the same rules regulating pro rata payment of concealed damage claims, that the principal question seemed to be whether the claim was actually a concealed one within the meaning of the rules. Appellant took the position that the claim was not a concealed claim. However, this issue was foreclosed against appellant by the jury which finding is not challenged. The rules of the American Trucking Association which govern members, including both appellant and appellee, were introduced in evidence by appellant. While the record is not clear whether the agreement between the appellant and appellee was written or oral, appellant admitted that it had adopted and was bound by the rules of the American Trucking Association. Whether such adoption was written, oral, or implied by law, seems to be immaterial because in such an instance the rules and by-laws of the Association do constitute a contract between its members. 7 C.J.S. Associations § 11, p. 34; Cline v. Insurance Exchange, 140 Tex. 175, 166 S.W.2d 677. Appellant's first point is overruled.

■■■ By its second point appellant contends that there is no legal basis alleged or proven to support the judgment of the trial court. This point is too general and does not meet the requirements of Rule 418, Texas Rules of Civil Procedure. However, we have consistently placed a liberal interpretation upon briefing rules. Chief Justice Dixon of this Court in Wyche v.

Noah, 288 S.W.2d 866 pointed out that while the point may be too general this Court will discuss the grounds as we understand them upon which appellant apparently relies to support his appeal, as disclosed in the statements and arguments accompanying his points on appeal. Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478; Little v. Employees Security Life Ins. Co., Tex.Civ.App., 343 S.W.2d 517. Accordingly, we have concluded from appellant's argument under this point that what is really contended is that the shipment in question was not one that was regulated by what is commonly called the Carmack Act Amendment to the Interstate Commerce Act, 49 U.S.C.A. § 20, which provides that a shipper may recover against any connecting carrier for loss or damage. The Carmack Amendment is applicable to interstate Motor Carriers as well as to Railroads. 49 U.S.C.A. § 319. This statute specifically allows a holder of a bill of lading to sue either the originating carrier or the delivering carrier and to recover without establishing on whose line the damage occurred. Panhandle & S. F. Ry. Co. v. Montgomery, Tex.Civ.App., 140 S.W.2d 241; Atlantic C. L. Ry. Co. v. Riverside Mills, 219 U.S. 186, 31 S.Ct. 164, 55 L.Ed. 167. The Carmack Amendment was passed to benefit shippers; it did not apply to a carrier, who, having paid the shipper, sought to collect from its fellow carriers. In such a case, the Carmack Amendment does not relieve the plaintiff-carrier from the burden of proving who actually did the damage. 49 U.S.C.A. § 20(12). Apparently, it was for the express purpose of avoiding this frequently impossible burden of proving which carrier did the damage that Rule 20 of the American Trucking Association Freight Claim rules was adopted. The testimony in this case reveals that it was impossible to ascertain which of the three carriers involved in this shipment caused the damage. For the very reason that appellee could not prove who did the damage it relied upon its contract with appellant that each participating carrier should share liability for concealed damage in the same ratio as shared in the income from the haul.

■ From appellant's argument under this point it is also apparent that it contends that appellee's pleadings are insufficient to support the agreement relied upon by appellee. While appellee's pleadings leave much to be desired yet the evidence pertaining to the agreement referred to under the first point was admitted without objection and the issue was therefore tried by implied consent of the parties. Rule 67, T.R.C.P. Appellant's second point is overruled.

■ Appellant's third point that "there is no proper measure of damages either alleged or proved by appellee" is likewise too general and does not meet the requirements of briefing rules. However, again we have, in line with the authorities cited under the second point above, sought to gain the contention of the appellant by the statement and argument under this point. In its trial petition, appellee alleged that after being confronted with a claim for undisclosed damage to the property in question by Dow Chemical Co. it investigated the loss and paid Dow Chemical Co. the sum of $3,755.-90, representing the "cost of repairing the stator". It was then alleged "having received 56% of the charges for transporting said stator, defendant is liable for 56% of the said $3,755.90 claim, or $2,103.30. On May 4, 1959, plaintiff paid defendant's pro rata liability on said claim, by its check No. 12393, payable to Dow Chemical Co. thereby becoming subrogated to the cause of action originally held by Dow Chemical Co. because of such subrogation and under the terms of the aforementioned agreement between plaintiff, defendant and Red Arrow, defendant is liable to plaintiff in the sum of $2,103.30." No issue was submitted to the jury on the question of damages, or the extent thereof, and appellee, plaintiff below, requested no issue to be submitted. The trial court apparently rendered judgment based on appellee's contention that Consolidated was bound under its agree-

ment to pay the amount of the loss to Union without the necessity of Union making any further proof, or securing a finding of the jury concerning the amount of the claim.

The same factual situation was presented in the case of Hamilton v. Herrin Transportation Co. (Tex.Civ.App.), 343 S.W.2d 300, n. r. e., wherein the contract between the parties provided for indemnification against loss on account of destruction or damage to freight caused by or resulting from negligence, or otherwise. Merchandise was damaged in transit and appellee paid the claim of $2,248.99, less freight, or a net of $1,955.64, for which amount the court rendered judgment against appellant. In that case, as here, there was no evidence in the record as to the value of the merchandise before or after it was damaged. The only evidence in that case, as here, was that a claim was made and paid and a later demand was made for indemnification. In holding that such proof was not sufficient to support the judgment, Associate Justice Wilson of the Waco Court of Civil Appeals said:

"Appellee's position is that when it proved payment of the claim in good faith, 'appellant became bound under the contract, as a matter of law, to reimburse appellee for such loss, without the necessity of making any other proof relative to the amount of the loss.'

"The position is untenable. In Waples-Platter Co. v. Commercial Standard Ins. Co., 156 Tex. 234, 294 S.W.2d 375, the same contention was made in a somewhat analogous subrogation claim where the insurer had paid insured under a fire insurance policy. The insurer contended that when it established defendant was liable for the loss, it was unnecessary to show the amount of damage to the insured property. The Supreme Court rejected the contention, holding that the measure of damage was not the

amount paid by the party primarily liable, but the difference between the reasonable cash market values of the property immediately before, and immediately after it was damaged. The fact that appellant in our case agreed to indemnify appellee from 'loss or damage suffered or incurred' by it, does not alter the application of the general rule; for the extent of appellant's liability is not necessarily the amount voluntarily paid by appellee, even though paid in good faith. The payment was made by appellee before appellant even had notice the consignee had made a claim, and appellee was required to show 'the reasonableness of the amount which it paid' for loss incurred, caused by some act or omission of appellant. Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775, 779; Gulf, Colorado & Santa Fe Ry. Co. v. McBride, [159] Tex.Sup. [442], 322 S.W.2d 492, 496."

Associate Justice Cramer of this Court in Waples-Platter Co. v. Commercial Standard Ins. Co. (Civ.App.), 287 S.W.2d 680 (affirmed as modified 156 Tex. 234, 294 S.W.2d 375) discussed the measure of damages in a subrogation case, saying that the measure of damages was not the amount paid on the fire loss claim, but was the reasonable cash market value of the property at the time it was destroyed by the fire, or, if it was not totally destroyed, the difference between the reasonable cash market value of the property immediately before and immediately after it was damaged.

■ In this case the only evidence is that Union paid the amount alleged by Dow Chemical Co. to have been the reasonable cost of repairing the property damaged in transit. There is no evidence in this record concerning the value of the property before or after the damage. There is no evidence that Consolidated agreed that the amount paid Dow by Union was the correct measure of damages. Appellant's third point is sustained.

We are of the opinion that the interest of justice requires that this case should be reversed and remanded for a new trial. Rule 434, T.R.C.P.; Waples-Platter Co. v. Commercial Standard Ins. Co., 156 Tex. 234, 294 S.W.2d 375.

Reversed and remanded.