**SCHUTZE et al. v. AUSTIN SAENGERRUNDE et al.**

No. 9970.

Court of Civil Appeals of Texas.
Austin.

Nov. 28, 1951.

Rehearing Denied Dec. 19, 1951.

Cofer & Cofer, by John D. Cofer, Harry S. Pollard, Austin, for appellants.

Sidney Purser, Trenckmann & Trenckmann, Hardy Hollers, Austin, for appellees.

ARCHER, Chief Justice.

This suit was instituted by C. A. Schutze against Austin Saengerrunde, a corporation, et al., to restrain the enforcement of a purported expulsion order (this order having been withdrawn and plaintiff restored to membership prior to the trial— this part of the suit became moot) and for a declaratory judgment adjudging the purported by-laws of the corporation to be void, and adjudicating the rights and status of plaintiff as a member of the corporation, including an adjudication that the singing members alone do not have the exclusive right to control and manage the affairs of the corporation to the exclusion of the nonsinging members, and that all members have the right to meet and vote in meetings of the corporation for election of officers and directors. A temporary injunction was granted; and subsequently, 61 nonsinging members of the corporation intervened as plaintiffs, adopting the allegations of the original petition.

On a trial of the merits of the case before the court, judgment was entered denying the permanent injunction, and adjudging the by-laws of the corporation to be valid and binding on all members of the corporation, and that the singing members have the sole legal right to manage the

affairs of the corporation, including the election of officers and directors, and all affairs of the corporation.

The appeal is before this Court on two points assigned as error, and are:

## First Point

The purported by-laws of Austin Saengerrunde corporation, including the purported by-law restricting to singing members the right to a seat and vote in corporate meetings, are invalid and ineffective because they were not validly adopted or acquiesced in by a majority of the entire corporate membership; and the trial court erred in entering judgment against appellants to the contrary.

## Second Point

A majority of the entire membership of Austin Saengerrunde corporation is entitled to amend, repeal or supersede any of its existing valid by-laws at a meeting called for such purpose after proper notice; and the trial court erred in entering judgment against appellants to the contrary.

In the main, the pertinent facts are stipulated, although some other testimony was heard.

In the stipulation it is recited who the plaintiffs are, who the defendants are, that the corporation, Austin Saengerrunde, was duly incorporated in May 1903, that a copy of the charter is made a part, and in the charter it is stated:

"Article II. This private corporation, composed of the individuals aforesaid, and their associates, under the name and style aforesaid, is formed for the purpose of social association among its members and their families, and for the support of an educational undertaking.

"Article V. The business of this corporation shall be conducted by a board of three trustees, * * *."

On the 5th of September, 1904, by-laws of the corporation were accepted in a regular meeting, and read in part as follows:

## "Article I.

"Membership.

"1. The club shall consist of active and passive members, however, the former only shall have seat and voting rights in the meetings.

"2. Every applicant announced for acceptance shall have passed his 18th birthday and must have an unimpeachable character. Every application must be endorsed by two active members and shall be submitted at a regular meeting.

"3. Voting for acceptance of application shall take place in the next regular meeting by balloting. In case the candidate receives three or more black balls, then he is rejected and cannot be proposed for membership again during the next six months.

"4. Every application for active or passive membership shall be accompanied by the sum of $2.50 for initiation fee. The monthly dues shall be 50 cents, for which all members and their families shall have free access to the amusements of the club and shall be entitled to use of the bowling alley and club rooms.

"5. To become an active member the applicant must undergo an examination by the director and may upon the latter's recommendation be taken into the singing section.

"6. Passive members may, after an examination by the director, become active without again paying the above mentioned initiation fee, but the again submit to balloting.

"7. Active members shall promptly appear at all rehearsals. Three consecutive absences from rehearsal without proper excuse brings transfer to the list of passive members.

\* \* \* \* \* \*

## "Article III.

"Meetings.

"1. There shall be a regular meeting on the first Tuesday in each month.

"2. Extra meetings may be called at any time by the president.

"3. Upon written request of five active members the president must call an extra meeting.

"4. When a special meeting is called all active members shall be notified.

"5. Seven active members constitute a quorum.

"6. All questions which are not covered by these by-laws shall be decided by precedent, resolution of a meeting, or by general parliamentary procedure.

\*   \*   \*   \*   \*   \*

"Article IV.

"Board of Directors.

"1. The Board of Directors shall consist of the president, vice-president, secretary, treasurer, and librarian.

"2. The election of the Board of Directors shall be held in the regular meetings held in June and December and shall be decided by a majority vote.

"3. The Board of Directors shall consist only of active members.

"Article V.
"(Provides for Committees.)

"Article VI.
"(Prescribes the duties of the Board of Directors.)

"Article VII.
"Amendments and Additions to the By-Laws.

"1. Amendments and additions to the by-laws must be handed in in writing and shall be endorsed by at least three active members."

It was stipulated that the membership of the Austin Saengerrunde is divided into three groups, the singers, the bowlers, and those who neither bowl nor sing.

That there are 28 members who belong to the singer's group, admission to which group is subject to the approval of the singing director and by a majority vote of the active members; that there are approximately 90 members of the bowler's group; 12 of whom are also members of the singer's group; that all may belong to the bowler's group; that there are approximately 100 members who belong to neither the singer's group nor the bowler's group, but participate in other social activities of the corporation; that all members not belonging to the singer's group are referred to as passive members.

That prior to June 27, 1885, there was an association known as Saengerrunde in Austin, Texas, which constituted a singing society; that on June 27, 1885, the society adopted by-laws which provided, among other things, that "the club consists of active and passive members and both enjoy the same rights." It was further provided, among other things, "the majority of the board of directors shall be active members."

On July 2, 1887, the members of Saengerrunde secured a charter as a corporation and became members of such corporation.

On September 7, 1892, at a meeting of the members of the corporation, a committee made up of the board of directors of the club was appointed to examine the by-laws and submit any changes or additions at the next meeting.

On September 29, 1892, that being the next meeting of the corporation, the following proceedings were had: " 'The by-laws of the club in somewhat changed form were unanimously approved under suspension of the rules.' Such by-laws then adopted provided among other things, that, 'The Club shall consist of active and passive members; however, the former only shall have a seat and vote in meetings;' and with the further provision, 'The passive members shall be accepted without payment of entrance fees; however, they shall pay monthly dues of 50 cents and for same they shall have free entrance to all entertainments of the Club.' And with the further provision, 'In order to become an active member, applicant shall be subject to an examination by the director (meaning director of singing) and upon the latter's recommendation can be accepted in the singing section.' And with the further provision, 'The Board of Directors shall consist only of active members.' "

That on March 10, 1903, a notice was read from the Secretary of State requesting payment of the franchise tax.

On May 1, 1903, the Charter of Saengerrunde, a corporation, was surrendered. On May 2, 1903, Austin Saengerrunde, a corporation, was chartered "for the purpose of social association among its members

and their families and for the support of an educational undertaking." The membership of what had theretofore been Saengerrunde, a corporation, continued the same, and automatically constituted the members of Austin Saengerrunde, a corporation.

On July 5, 1904, the new corporation met at Scholz Garden, and the bowling committee, having been appointed by the active members, submitted rules which were approved by the club; and a motion was adopted amending the rules to provide that passive members, beginning August 1, 1904, pay $2.50 as entrance fee, and some other minor changes were made, which were accepted by the club on September 5, 1904.

That at none of the meetings of the corporation have any members, other than the singer's group (active members), been permitted to participate or to vote, but all actions have been taken by votes cast by the active members only; and the by-laws were adopted by the vote of the active members and no passive members were or are permitted to vote and were not notified of meetings of the singer's group, but have been permitted to make suggestions or recommendations at meetings of the singer's group.

That the Austin Saengerrunde, a corporation, has no other by-laws except the by-laws attached as Exhibit "C", which were written and amended in the German language. Exhibit "C" is a translation from the German language to the English. We have embodied hereinabove certain portions of the by-laws.

That the plaintiffs and interveners became members of the Austin Saengerrunde on various dates, as set out in the stipulation, such dates being a few as early as 1904, a few others prior to 1919, with the majority since 1930.

That the determination as to who may become associated with, or who shall be disassociated from the Austin Saengerrunde, a corporation, is now, and since 1903 has been exercised by "active" members only.

That prior to 1943, no copies of by-laws were furnished applicants for membership; that after 1943, copies of the by-laws, as amended, were furnished, and subse-quent to 1943, the applications contained a statement that applicant will abide by the Constitution and by-laws, rules and regulations of the corporation; that plaintiffs have paid their dues to the officers elected by the active members only.

That C. A. Schutze and 27 of the interveners were parties plaintiffs in Cause No. 67,666 in the District Court of Travis County.

That no passive member, who was qualified under the provisions of the by-laws at any time since the Austin Saengerrunde, a corporation, has been organized, and who applied to become an active member, has been refused membership as such active member.

That some applicants for membership specify in their application for admission, whether oral or written, as to whether they desire to become active or passive members, and this custom has been uniformly enforced so that applications for membership in said corporation specify whether the applicant is to be an active or passive member.

The testimony at the trial was given by Manfred Holck, who testified that he was elected treasurer of Austin Saengerrunde the last time at the annual meeting in June, 1949, of the active members, and that he had on hand certain funds which were accumulated through leases between the Home Company and the Saengerrunde, concessions and other rentals, and that he made reports to the Board of Directors of Austin Saengerrunde, and no others, and never had received a request for any; that some people had been talking, but nothing beyond that. Further testimony was given concerning an annual meeting of the entire membership of the active and passive members of the Home Company for the purpose of electing a trustee and directing the trustee which directors should be elected by the Home Company; that the trustee calls the meetings; that there were about 26 members of the active group, and that the entire membership is about 180. He testified that some of the passive members spoke German. That German was spoken at the meetings of the active members, and the minutes were kept in German. That translation into English was made for any-

one who requested it. No requirement of an applicant for membership within the singing group to be able to speak and understand German; all dues for membership are paid to the treasurer of the Austin Saengerrunde. The active group meet every Tuesday night for singing rehearsal.

C. A. Schutze testified that he had been a member of Austin Saengerrunde about 31 years; that his father Ed Schutze was a charter member; that the active members spoke and understood German; that he understood the German language fairly well; that there are some passive members who were at one time active, and sang with the singer's group.

On cross-examination Mr. Schutze stated that on his application for membership in 1919 the word "passive" was written in by himself; that he did not join or apply to join the singing society.

Herman Bohn testified that he was a member of the Austin Saengerrunde and had been since 1924, and participated in the singing rehearsals; that there is nothing in the rules of the active group that requires a person to know and sing in German in order to qualify for active membership, or to speak and understand German, they must sing; that songs are in German, English and other languages.

William Bohn testified that he was an active member and president of the Austin Saengerrunde; that there are regular nights to receive applications, which are recommended by two active members, and which state whether applying for passive or active membership, and on favorable action the name is posted on the board in the club room so everyone can see who it is and who recommended him.

The question before this Court is not the wisdom of the 1903 by-laws whereby the active members only are permitted to vote, but is: Are such by-laws invalid and ineffective? And if so, is a majority of the entire membership of Austin Saengerrunde entitled to amend or repeal any of its by-laws?

We have set out what we believe to be the pertinent part of the by-laws accepted in a regular meeting on the 5th of September, 1904. At none of the meetings of the corporation have any members other than the active members been permitted to vote.

We believe that the September 1904 by-laws of Austin Saengerrunde, in which membership was classified as either active or passive and limiting the right to vote at business meetings to active members, are valid and binding on the parties to this suit; and, as in this case, recognition and acquiescence in the pre-existing by-laws would make them valid, operative by-laws of the organization.

It is to be observed that the voting restriction first appeared in the by-laws of 1892 and were adopted at a meeting in which all members voted, and the vote was unanimous. The restrictive by-law then read as follows: "The club shall consist of active and passive members; however, the former only shall have seat and vote in the meetings." 1892 By-laws, Art. I, Membership, Sec. I.

In the 1904 by-laws the clause reads: "The club shall consist of active and passive members, however, the former only shall have seat and voting rights in the meetings." 1904 By-laws, Art. I, Membership, Sec. I.

When the new corporation was chartered the by-laws that had been adopted in 1892 were carried over and became the by-laws of the 1903 corporation and in like manner continued as the then by-laws until the adoption of the 1904 by-laws.

In American Jurisprudence, it is said: "If the charter or general laws prescribe any formalities as to the adoption of by-laws, they should be observed, but by-laws may be adopted as well by the acts and conduct of a corporation as by express vote or adoption in writing, unless it is otherwise provided. Thus, by-laws prepared and approved at stockholders' meeting held before recording the articles of incorporation, if they are afterward relied on and treated as by-laws of the corporation by the directors and stockholders, must be regarded as in law the by-laws of the corporation." 13 Amer.Jur. 285, Corporations, Sec. 154; Collins v. Cobe, 202 Ill. 469, 66 N.E. 1079;

National Surety Company v. Williams, 74 Fla. 466, 77 So. 212.

The trial court expressly found in the judgment that the contested by-laws were adopted many years prior to the trial and were in use at the time plaintiffs and intervenors became members of the association.

Neither party made request for filing of conclusions of fact and law, and none were made other than those set out in the judgment, and we impute to the Court such a finding, which we believe the evidence supports as well as sustains the judgment. Hull v. Woods, 14 Tex.Civ.App. 590, 38 S.W. 256; Woods v. Hull, 90 Tex. 228, 38 S.W. 165; see also Janes Contracting Company v. Home Life & Accident Company, Tex.Sup. 1924, 260 S.W. 839.

By reference to the agreed facts, it is noted that it was stipulated that the Austin Saengerrunde has no other by-laws except those in Exhibit "C" hereinabove set out, and adopted as set forth in paragraph XX, and that except for the making of suggestions and recommendations, passive members have never been notified of meetings or permitted to vote and that all actions have been taken and votes cast by the active members only; and further plaintiffs and intervenors while members of Austin Saengerrunde paid dues to the officers elected by the active members only.

Thirty-nine of the appellants expressly agreed in the applications which they made at the time of their admission to membership to abide by the by-laws and rules and thirty-six of this group indicated that they desired to become passive members. It was stipulated that the custom of having applicants indicate a choice as between active and passive membership has been uniformly enforced.

We do not believe that Articles 1326 and 1396, Vernon's Ann.Civ.St. confer upon the passive members of Austin Saengerrunde any additional rights to those conferred by their membership contract and agreement, the applications being in most instances for either passive or active classification.

We believe that the evidence supports the finding of acquiescence, usage and acceptance by the members generally of the 1904 by-laws.

The rule is stated in 2 Hildebrand, Texas Corporations 531, Sec. 571, as follows: "A person becoming a member of a corporation after a by-law has been adopted, prohibiting members from doing certain things, is bound thereby. It is part of his contract, and he cannot object to it on the ground that it deprives him of vested rights." Manning v. San Antonio Club, 63 Tex. 166; Screwmen's Benevolent Ass'n v. Benson, 76 Tex. 552, 13 S.W. 379.

In Brown v. Harris County Medical Society, Tex.Civ.App.1917, 194 S.W. 1179, 1180, 1181, the court said: "It is well settled that when parties form voluntary associations for religious, literary, social, or other purposes, and adopt rules by which to regulate their conduct and measure their rights, and by the provision of which members may be admitted and expelled, such rules are articles of agreement to which all who have become members are parties and must be governed thereby in their relations to such association."

In Cline v. Insurance Exchange of Houston, 1942, 140 Tex. 175, 166 S.W.2d 677, 680: "A voluntary association has the power to enact rules governing the admission of members and prescribing certain qualifications for membership; and such rules will be enforced, unless they are against good morals or violate the laws of the State."

We believe that the rights of the parties in the present action were adjudicated in Cause No. 67,666, styled Cecil Birk, et al. v. Austin Saengerrunde Home Company, and that the plaintiffs and intervenors are estopped to again try out and litigate again the same issues.

In the first suit the plaintiffs sought a declaration of the rights of passive members, and said in the pleading:

"(c) That at such stockholders meeting all members of Austin Saengerrunde, whether active or passive, be permitted to vote the stock or to direct how the stock be voted which is claimed to be held by Carl Widen as trustee. That is, that as to each question coming before said meeting that the majority of the members of Austin

Saengerrunde direct how said 1195 shares of stock shall be voted."

In the present suit the prayer was: "* * * and to judgment declaring and establishing his rights as a member of said corporation and to participate in the election of the officers and directors of said corporation and in the management and affairs of said corporation, and to all intents and purposes to enjoy the rights, privileges and authority of a member of said corporation without discrimination in favor of any other members, and for all other relief, legal and equitable, to which he may be entitled, and he will ever pray."

It is therefore to be seen that in both cases plaintiffs sought an adjudication under the Declaratory Judgment Act of the rights of the passive members to vote in the proceedings of the Austin Saengerrunde as distinguished from the Austin Saengerrunde Home Company.

The judgment of the court was: "(2) That plaintiffs, having become members subject to the by-laws of the association, are in no position to complain of any of the by-laws that were in force at the time they so became members, and they have failed to show themselves entitled to any relief as against the officers and directors of the association, other than in the selection of the trustee, as hereinafter mentioned."

The judgment further provided: "It is further ordered, adjudged and declared that all relief prayed for by plaintiffs not herein specifically granted be and the same is hereby denied, to which action of the court the plaintiffs in open court duly excepted."

In American Heating & Plumbing Co., Inc., v. Trafton Tile & Marble Co., Tex. Civ.App., 132 S.W.2d 140, 141, it was held: "The court had before it all 'matters in controversy' raised for decision under the pleadings in the cause, and the court did not exclude anything from the effect of the adjudication. Thus the judgment specifically disposed of one of the two rights of the defendants, and not having mentioned the other right in issue by the pleadings, it in effect denied the other or latter right of the defendants set up by the cross-ac-

tion." See Guerra v. Garza, Tex.Civ.App. 1936, 93 S.W.2d 537.

In St. Regis Candies, Inc., v. Hovas, Com. App.1928, 117 Tex. 313, 3 S.W.2d 429, the court held that a corporation may legally issue nonvoting stock, and discusses the general proposition of corporate management, etc.

In the St. Regis Candies, Inc., v. Hovas case cited:

"* * * it appeared that Paul Xanthull was the sole owner of a prosperous business and entered into an arrangement with S. N. Hovas, R. P. Donigan, P. H. Donigan and John G. Manison to form a corporation known as St. Regis Candies, Inc. The charter of the corporation provided for a capital stock of $125,000 having a par value of $100 per share and divided into 1,000 shares of Class A stock and 250 shares of Class B stock. It was specifically provided in the charter that 'Class B stock shall be distinguished from Class A stock in that it shall have no voting privileges or power.' Of the Class A stock, Xanthull held 510 shares, while Hovas and others held 490 shares. Of the Class B stock Xanthull held 40 shares and Hovas and others held 210 shares. While Xanthull had a majority of Class A stock, he held 550 shares of the total of the A stock and B stock as against 700 shares held by Hovas and others.

"Hovas and the shareholders other than Xanthull called a meeting for the purpose, among others, of amending the by-laws so as to eliminate the distinction between Class A and Class B stock, or, in other words, to invest the holders of B stock with voting privileges. On the question of the adoption of this change the Class B stock was voted. The Supreme Court, in answer to certified questions, held that this action was illegal. Class B stock was voted in the face of a charter provision which provided that it had 'no voting privileges or power.' It was a clear instance of 'getting the cart before the horse.'" Quilliam v. Hebbronville Utilities, Inc., Tex.Civ.App., 241 S.W. 2d 225, 227 n. r. e.

The judgment of the trial court is affirmed.

Affirmed.