L. Fred HOEY, Individually and d/b/a Fred Hoey & Co., Appellant,

v.

SAN ANTONIO REAL ESTATE BOARD, Inc., Appellee.

No. 13042.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 28, 1956.

Rehearing Denied Dec. 31, 1956.

Lang, Byrd, Cross, Ladon & Oppenheimer, John P. Giles, San Antonio, for appellant.

Birkhead, Beckmann, Stanard, Vance & Wood, John H. Wood, Jr., San Antonio, for appellee.

POPE, Justice.

Fred Hoey, individually and d/b/a Fred Hoey & Co., appealed from a judgment which denied his action for damages and a permanent injunction against the San Antonio Real Estate Board, Inc. The Real Estate Board, after a trial before a division of that body and Hoey's refusal to pay a fine imposed by the division, ordered Hoey's expulsion from the Real Estate Board. Hoey's points on this appeal are essentially, that (1) the Board possessed no power to expel him, and (2) there was no proof of his "wilful" violation, as required by the rules of the Real Estate Board.

The San Antonio Real Estate Board is a corporation with approximately 900 members. It has certain committees and divisions. One of the divisions is the Multiple Listing Service, which is composed of about 700 members, all of whom are also members of the parent organization. Hoey was a member of both the parent and the division. He was charged with violation of the rules of the Real Estate Board in taking an exclusive listing without obtaining a written request from the owner and without advising the Multiple Listing Service of his exclusive listing. To pass upon the powers of the Board in making its order of expulsion, we must examine the structure of the organization. The Constitution of the parent organization authorized the establishment of "divisions". Multiple Listing Service, hereafter called MLS, was established as such a division. Membership in the Real Estate Board was a prerequisite to membership in MLS. MLS had its own Board of Governors, but all acts of MLS were subject to the approval of the directors of the Board. Expenditures of money and employment of personnel were subject to the approval of the Board. All income to MLS belongs to the parent organization. Manifestly, MLS is an integral part of, is dependent upon and subject to the parent organization, both by the terms of the Constitution of the Real Estate Board and the rules of MLS itself.

Both MLS and the Board for the parent organization possessed certain powers. MLS, the division to which the trial was directed, among others, possessed powers to arrange an amicable settlement, suspend the listing service to its members, recommend expulsion to the Board of Directors of the parent organization, refer complaints to the Real Estate Board for appropriate action, fine in an amount equal to five per cent of the price that property is listed, and in the event the fine is not paid to suspend or expel the member from MLS. The Real Estate Board itself possessed certain additional powers, such as the power of censure, suspension or expulsion at the discretion of the Board of Directors for violation of the Constitution, by-laws, or rules and regulations of the Board; suspension from all rights and privileges of the Board for non-payment of dues or other indebtedness, and expulsion if such non-payment continues for six months.

Hoey was charged with violating the rules of MLS in that during 1954 he obtained a sixty-day exclusive listing of some property from Mr. R. A. Haegelin. The MLS rules required that a member taking an exclusive listing must also obtain a written request from the owner for the exclusive listing, which request in turn must be furnished the MLS central office. Hoey failed to obtain this request because the owner, Haegelin, refused to sign one. Hoey sent no notice to MLS and it had no notice of the situation. An exclusive listing works against the objectives of multiple listing, under which plan any member may sell the property, with the agent obtaining the listing receiving one-half the commission and the selling agent receiving the other one-half.

The exclusive listing contract provided that any sale made within ninety days after the sixty days provided in the exclusive contract, to persons to whom the exclusive agent had shown the property would entitle the exclusive agent to the full commission. After the sixty days but before the ninety days thereafter had elapsed, a second agent

closed a sale on the property. The second agent did not know of Hoey's former exclusive listing. A dispute between the agents resulted in a hearing before the Arbitration and Ethics Committee of the Real Estate Board. That committee decided that Hoey was entitled to and he did receive the full commission. The Ethics Committee reported further that Hoey possibly violated the rules of MLS. The Real Estate Board then referred the matter of the possible MLS rule violation to that division for decision.

The officers of MLS, on February 22, 1955, sent written notice to Hoey of the time and place for a hearing of the complaint that he failed to comply with the rules concerning the exclusive listing, and of his failure to obtain from the owner the required exemption slip and to notify MLS. Hoey, in writing, informed MLS that his complete file on the listing in question was in their hands and invited their attention to it as well as the full transcript of the hearing before the Ethics Committee. The scheduled hearing was conducted, but Hoey chose not to appear. His agent who handled the Haegelin listing was out of the city but Hoey did not request a postponement. MLS informed Hoey, after its hearing, that he was fined $400 for the rule violation. MLS again wrote Hoey, fifty-six days later, that the fine had not been paid and that the matter would be referred to the Board of the parent organization if he did not pay the fine by May 30, 1955. Hoey then wrote the parent organization that he had been wrongfully fined, since he had not "wilfully" withheld the listing, and also sent an affidavit from Haegelin, the listing owner, who assumed the blame because of his refusal to sign the exemption slip. This additional information was directed to MLS for their review of the case. Hoey did not appear nor ask to appear at this second hearing. MLS confirmed its former decision and again forwarded the matter to the parent. On June 13, 1955, the Board extended the time for payment to July 10th, and notified Hoey in writing that he would be suspended unless he paid the fine by that date, and expelled if he did not pay it by September 2. Hoey then employed counsel who advised the Board that Hoey would seek an injunction if it persisted in its demands. The Board then, for the third time, reviewed and considered the entire case and reaffirmed its decision. This suit followed.

 Procedurally, MLS conducted two hearings, and the Board conducted three reviews. Hoey, though notified, never appeared. He supplied the information he considered pertinent, and that information was a part of the evidence considered by both MLS and the Board. The burden was on Hoey to present his defenses, his evidence and witnesses, not on the Board. Hoey had notice and was given an opportunity to be heard and the right to offer evidence at repeated hearings and rehearings. Hoey's point that the Board was powerless to expel him is without merit. MLS possessed both the power to fine and to expel him from MLS. MLS is an integral part of the Board which referred the matter to MLS for decision.

The Board possessed the power to review and further to expel if the order was not obeyed. Article IV, Section 2, of the Real Estate Board's Constitution and By-laws, provides that any member of the Board who "shall be found guilty of * * * violation of the Constitution, By-Laws, or the rules and regulations of the Board, shall be subject to censure, suspension or expulsion by the Board of Directors at their discretion." MLS found there was a violation of its rules and regulations. Those rules and regulations are such as the Constitution and By-Laws intended the members to obey. The division made the rules, subject to the approval of the Real Estate Board. The Board has the power to compel its members to conform to the rules of its divisions. The Board possessed the power to expel, upon the finding by MLS that Hoey violated the rule, and also upon his failure to pay the fine.

Article III, Section 2, of the Board's Constitution, provides for the forfeiture of membership for non-payment "of dues or other indebtedness to the Board" for a period of six months. We are here dealing with a voluntary association, not an act of the Legislature. The applicable rule is stated in Brotherhood of Railroad Trainmen v. Price, Tex.Civ.App., 108 S.W.2d 239, 241, which states:

"Courts are not disposed to interfere with the internal management of a voluntary association. The right of such an organization to interpret its own organic agreements, its laws and regulations, after they are made and adopted, is not inferior to its right to make and adopt them. And a member, by becoming such, subjects himself, within legal limits, to his organization's power to administer, as well as to its power to make, its rules. To say that the courts may exercise the power of interpretation and administration reserved to the governing bodies of such organizations would plainly subvert their contractual right to exercise such power of interpretation and administration. So long as such governing bodies do not substitute legislation for interpretation, do not transgress the bounds of reason, common sense, fairness, do not contravene public policy, or the laws of the land in such interpretation and administration, the courts cannot interfere. Shaup v. Grand International Brotherhood, etc., 223 Ala. 202, 135 So. 327. Without such latitude of action, associations organized to promote the legitimate welfare of its members would be deprived of power to do so."

The remaining major point is that the proof of the charge was lacking to such an extent as to evidence caprice by the Board. Hoey was charged with violating Article VI, which provides: "No listing may be held exclusively by the listing broker unless the owner, unsolicited, so requests specifically and signs a special form restricting the listing. Such restricting form shall be forwarded to the MLS office within 48 hours from date of listing." Hoey does not contend that he complied, but that he should have been excused from complying because the listing owner stubbornly refused to sign the restriction slip. Membership in MLS was a purely voluntary matter. Membership in the Real Estate Board itself was also voluntary. One may join or not join, as he desires. But when he joined, Hoey agreed upon certain limitations upon his right to enjoy an exclusive listing. In joining, he weighed the advantages of MLS against the advantages of exclusive listings. When he joined MLS he decided to abide the restrictions upon his right to exclusive listings. One of those limitations which Hoey consented to was that he would take no exclusive listing if the owner did not sign a special form restricting the listing to Hoey. Hoey violated that provision. He consented further to forward the owner's restricting form to MLS within 48 hours. He violated that rule. He did these things not personally, but through an agent, but the Board's Constitution expressly states that members are accountable for the observance of the rules and regulations of the Board by their salesmen and other employees, "and shall be responsible therefor in all respects."

Hoey had such knowledge as charges him with the wilfulness intended by the rule. He intended to and did take the listing with knowledge that he did not have the exemption slip. While he was holding the exclusive contract he was a member of MLS, and after the contract had expired he knew that he did not have the exemption slip. He knew also that he had not sent MLS the exemption slip or any other advice which would put the other 700 MLS members on notice, and that there was no way for them to know, unless he did notify MLS. He also knew that the MLS rules required him to obtain the exemption slip and to mail it to MLS. He knew that what he did, if done by all realtors, would defeat

every purpose of MLS. When Hoey associated himself with the MLS and the Board he became personally responsible for compliance with their rules. The fact that a listing owner was "stubborn" did not change the rules of the organization. The rules govern the members, not the public. What Hoey did through his agent he did with full knowledge that he was violating the rule. He did it consciously and intentionally. It was a "wilful" violation as found by MLS and approved by the Board. 2 Bouv.Law Dict., Rawle's Third Revision, p. 3454.

■ Hoey, by his assent to the rules of the Real Estate Board, bound himself to abide by all the lawful limitations imposed by those rules. Lundine v. McKinney, Tex. Civ.App., 183 S.W.2d 265; 7 C.J.S., Associations, § 11; Cline v. Insurance Exchange of Houston, 140 Tex. 175, 166 S.W.2d 677. Hoey was fairly tried in accord with the rules of the organization to which he assented. St. Louis S. W. Ry. Co. of Texas v. Thompson, 102 Tex. 89, 113 S.W. 144.

The judgment is affirmed.