**BAYWOOD COUNTRY CLUB, Bob R. Blair, and Bernard Bentch, individually and as President of Baywood Country Club, and Ray Music, individually and as Vice–President of Baywood Country Club, Appellants,**

v.

**Quenton ESTEP and S.V. Spurlock, Trustees and Proxy, Appellees.**

**No. 01–95–00613–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 22, 1996.

Dan R. Barfield, Pasadena, Richard N. Countiss, Houston, for appellants.

Frederrick F. Hoelke, Olney G. Wallis, Houston, for appellees.

## OPINION

TAFT, Justice.

Appellants, Baywood Country Club, Bob R. Blair, and Bernard Bentch, individually and as President of Baywood Country Club, and Ray Music, individually and as Vice President of Baywood Country Club (collectively "Baywood"), appeal from the trial court's injunction in favor of Quenton Estep and S.V. Spurlock, Trustees and Proxy (collectively "Estep"). The court ordered Bay-

wood to call a special meeting of the Sustaining Members of Baywood Country Club to vote on the sale of assets and dissolution of Baywood Country Club, Inc. In this appeal, we are called upon to examine the validity and application of a corporation's articles of dissolution provisions. We affirm.

## Facts

On August 4, 1954, Humble Recreation Club, now Baywood Country Club, was incorporated as a Texas non-profit, non-stock corporation to provide various recreational facilities to employees and associates of Humble Oil and Refining Company. On May 15, 1959, the Humble Recreation Club changed its name to Humble Country Club. Sometime in 1967, the name was again changed to Baywood Country Club (BCC).

Prior to 1970, the Club was a non-stock corporation. However, in 1970 BCC hired legal counsel to advise on the restructuring of the corporation. BCC followed the procedure outlined by its legal counsel to amend its Articles of Incorporation. At a meeting on January 15, 1971, BCC members approved the Restated Articles of Incorporation ("Restated Articles") by a two-thirds majority vote.[1] The Restated Articles were approved by the Secretary of State on March 4, 1971, and BCC has been operating under the same Restated Articles and By–Laws ever since.

The Restated Articles established two classes of membership—"sustaining members" and "active members." The sustaining members are comprised of existing members in good standing on December 31, 1970. Active members consist of all other members of BCC.

Under the Restated Articles, the sustaining members received a certificate of membership and have the exclusive right to vote on any resolution that pertains to the dissolution of the Club. Additionally, the sustaining members receive all the net proceeds from dissolution of BCC's assets after payment of $200 to the active members for each active membership certificate outstanding at that time.

Active members receive a certificate of active membership; they pay dues, use Club facilities, and manage the Club through the Board of Directors (the Board). Active membership holders may not participate in the decision of dissolution of BCC and are not entitled to share in the proceeds of dissolution except to receive $200 per outstanding certificate.

In 1993, Estep collected proxies and voting trusts from a majority[2] of the sustaining members and asked the Board to call a special meeting of all sustaining members for the purpose of considering a resolution to dissolve the Club. Baywood agreed to call a special meeting, but refused to put dissolution of the corporation on the agenda. On November 5, 1993, Baywood advised Estep that Baywood would call a special meeting for the purpose of considering dissolution after Estep provided satisfactory proof that Estep represented at least 10 percent of the sustaining members as required by the corporate By–Laws.[3] When Estep provided such proof, Baywood again refused to call a special meeting of sustaining members until at least 10 percent of the sustaining members personally submitted a written request for a special meeting. Counsel for Estep hand-delivered 25 proxies and/or voting trusts (more than 10% of the sustaining membership) to Baywood's counsel. Following receipt of the 25 proxies and/or voting trusts, Baywood's counsel advised Estep that a special meeting of sustaining members would not be called.

Estep filed suit, asking the trial court for injunctive relief, $4,500,000 actual damages, and $10,000,000 exemplary damages. The

---

1. Two-thirds of the membership is required to approve amendments to the Articles of Incorporation.

2. It has been stipulated that Estep represents at least 134 of the 221 sustaining members.

3. The current corporate By–Laws provide that "[a] special meeting of the Sustaining Members shall be called by the President upon the written request of ... ten percent (10%) of the Sustaining Members."

court granted injunctive relief, ordering Baywood to comply with BCC's Restated Articles and By–Laws by calling a special meeting of the sustaining members and severed the judgment as to the injunctive relief. Baywood appeals this judgment, asserting the trial court erred and abused its discretion.

### Points of Error

In three points of error, Baywood asserts the trial court abused its discretion by: (1) ordering BCC's Board to call a special meeting of the sustaining members to vote on the sale and dissolution of BCC because the Board, not the sustaining members, has sole discretion to determine whether the members should vote on such matters; (2) ordering the Board to call a special meeting of the sustaining members because the Restated Articles establishing sustaining members is void or voidable; and (3) refusing to apply the *cy pres* doctrine.

 The grant or refusal of an injunction is ordinarily within the sound discretion of the trial court. Thus, on appeal, "review of the trial court's action is limited to the question of whether the action constituted a clear abuse of discretion." *Priest v. Texas Animal Health Com'n*, 780 S.W.2d 874, 875 (Tex.App.—Dallas 1989, no writ). An abuse of discretion occurs if the trial court (1) acts arbitrarily and unreasonably, without reference to guiding rules or principals or (2) misapplies the law to the established facts of the case. *Manufacturers Hanover Trust Co. v. Kingston Investors Corp.*, 819 S.W.2d 607, 610 (Tex.App.—Houston [1st Dist.] 1991, no writ); *Priest*, 780 S.W.2d at 875.

### A. Determination of Voting Rights to Consider Dissolution

 Baywood argues in its first point of error that because the Board has sole discretion over the management of BCC's affairs, it has sole discretion to initiate the sale and dissolution of BCC's assets. Furthermore, Baywood contends that regardless of whether a special meeting concerning dissolution was called and the requisite number of sustaining members voted to dissolve BCC, Baywood has authority to ignore the sustaining members' decision. Thus, the trial court abused its discretion by ordering the Board to call a special meeting of the sustaining members to vote on a resolution of dissolution.

Baywood's contention that it has sole discretion to initiate the sale and dissolution of the Club's assets is erroneous. Section four, article eight of the Club's By–Laws clearly mandates that "[a] special meeting of the sustaining members shall be called by the President upon the written request of … ten percent (10%) of the Sustaining Members…." Estep complied with the By–Laws and tendered written request by more than 10 percent of the sustaining members; however, Baywood refused to call a special meeting.

Baywood nevertheless contends that article 1396–5.09(A)(1) of the Texas Non–Profit Corporation Act is controlling and such Act gives the Board authority to disavow any vote by the sustaining members pertaining to the sale and dissolution of the Club's assets. The article is under the heading "Sale, Lease or Exchange of Assets." The relevant part reads:

> After such authorization by vote of members, the board of directors nevertheless, in its discretion, may abandon such sale, lease, or exchange of assets, subject to the rights of third parties under any contracts relating thereto, without further action or approval by members.

TEX.BUS.CORP.ACT ANN. art. 1396–5.09(A)(1) (Vernon 1980).

Baywood confuses "sale" of corporate assets with "dissolution and sale" of corporate assets. The article Baywood cites as authority deals with the general sale, lease and exchange of corporate assets, not the sale of assets through dissolution of the corporation. A separate article of the Texas Non–Profit Corporation Act, article 1396–6.01, controls the sale of assets through the voluntary dissolution of a non-profit corporation. The relevant portions of the Act provide:

> (1) Where there are members having voting rights, the board of directors shall adopt a resolution recommending that the corporation be dissolved, and directing that the question of such dissolution be

submitted to a vote at a meeting of members having voting rights, which may be either an annual or a special meeting. . . . A resolution to dissolve the corporation shall be adopted upon receiving at least two-thirds of the votes which members present at such meeting in person or by proxy are entitled to cast. . . .

(3)B. Upon the adoption of such resolution by the members, . . . the corporation shall cease to conduct its affairs except in so far as may be necessary for the winding up thereof, shall immediately cause a notice of the proposed dissolution to be mailed to each known creditor of and claimant against the corporation, and shall proceed to collect its assets and apply and distribute them as provided in this Act.

TEX.BUS.CORP.ACT ANN. art. 1396–6.01 (Vernon 1980).

Article VIII, section (2)(b) of BCC's Restated Articles provides the sustaining members with "[t]he exclusive right to vote on any resolution which recommends that the corporation be dissolved . . . provided, however, that for such a resolution to be adopted it must receive at least two-thirds (⅔) of the votes which Sustaining Members present at the meeting in person or by proxy are entitled to cast."

Thus, BCC's Restated Articles and By-Laws are in compliance with article 1396–6.01 and are controlling. *See Harden v. Colonial Country Club,* 634 S.W.2d 56, 59 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.) (non-profit associations have right to manage, within legal limits, their own affairs without interference from courts); *see also Burge v. American Quarter Horse Ass'n,* 782 S.W.2d 353, 354 (Tex.App.—Amarillo 1990, no writ); *Hoey v. San Antonio Real Estate Bd.,* 297 S.W.2d 214, 217 (Tex.Civ.App.—San Antonio 1956, no writ). Because BCC's Restated Articles and By–Laws give sustaining members exclusive right to vote upon the

dissolution of the corporation and exclusive right to receive the net proceeds from the sale of assets upon dissolution, save and except $200 for each outstanding active member certificate, we conclude that Baywood's argument that it has sole discretion to initiate sale and dissolution is without merit.. We overrule Baywood's first point of error.

**B. Restated Articles**

■ In its second point of error, Baywood argues that the trial court erred by ordering the Board to call a special meeting of the sustaining members because the Restated Articles establishing sustaining members are flawed. Specifically, Baywood contends that BCC's 1970 Board of Directors sent one draft of the Restated Articles to its members for approval which was voted on and approved, then sent a different draft that did not contain two paragraphs in article XI [4] to be filed with the Secretary of State. Thus, Baywood contends the Restated Articles filed with the Secretary of State in 1971 have never been approved by the sustaining members and, therefore, the original Articles of Incorporation are still in effect. Under the original Articles, there are no sustaining members and no member can receive the proceeds from the sale of the assets upon dissolution.

However, the record contains evidence to the contrary. The letter attached to the proposed amendments sent to all members of BCC prior to the adoption of the Restated Articles stated:

In essence the proposed changes set up two different types of membership certificates. The first will be known as a Sustaining member. Humble members who are bona fide members in good standing on December 31, 1970 will receive a Sustaining Membership Certificate indicating their pro rata share of *ownership* in the Club. . . . *In the event the Club is ever*

---

**4.** Paragraphs 1 and 2 of article XI in the first draft of the Restated Articles of Incorporation were deleted. Section 2 states:

To the extent that the corporation holds any property or properties which are held on the condition that they be returned upon the dissolution of the corporation or on the condition that they be transferred to another social or

recreational club upon dissolution, these properties shall be distributed according to those conditions.

Thus, by deleting paragraph 2, the sustaining members would be able to receive upon dissolution all properties conditionally held by the corporation (BBC).

*dissolved the owners of these certificates would share in the proceeds from liquidation of the Club.*

(Emphasis added.) The Restated Articles filed with, and approved by, the Secretary of State contain a recitation that:

> The Restated Articles of Incorporation as so amended were adopted at a meeting of members held on January 15, 1971, at which a quorum was present, and the Restated Articles of Incorporation as so amended received at least two-thirds of the votes which the members of each class present or represented by proxy at such meeting were entitled to cast.

Furthermore, Quenton Estep, the presiding board president at that time, testified that at the meeting on January 15, 1971, a lengthy floor debate ensued concerning the Restated Articles which concluded with a vote of over two-thirds of BCC's members approving the Restated Articles. These Articles were then sent by BCC's counsel to the Secretary of State. They were reviewed by the Secretary of State and approved on March 4, 1971.

Nothing in article 1396–4.06 of the Texas Non–Profit Corporation Act provides that proposed amendments to articles of incorporation cannot be modified or changed when submitted to the members for a vote—which appears to have been the case. *See* Tex.Bus. Corp.Act Ann. art. 1396–4.06 (Vernon 1980). Furthermore, once the Restated Articles were modified, approved by the members, and filed with and approved by the Secretary of State, they superseded all prior Articles of Incorporation. *See id.*

Moreover, the Restated Articles in question have been used in the operation of the Club's management and affairs for almost 23 years before this dispute and, thus, notwithstanding the above, have been adopted by a uniform course of proceeding, usage, and acquiescence. *See Schutze v. Austin Saengerrunde*, 244 S.W.2d 341, 345–46 (Tex.Civ. App.—Austin, 1951, writ ref'd n.r.e.); *Keating v. K–C–K Corp.*, 383 S.W.2d 69, 71 (Tex. Civ.App.—Houston 1964, no writ).

The record supports the trial court's conclusion and, thus, it cannot be said the trial court's action constituted a clear abuse of discretion. Accordingly, we overrule Baywood's second point of error.

### C. *Cy Pres* Doctrine

 Baywood argues in its third point of error that the trial court erred and abused its discretion by refusing to apply the *cy pres* doctrine.[5] Baywood contends that BCC's original Articles of Incorporation and the deed conveying property to BCC establish BCC as a charitable entity. Article VIII of the original Articles prohibits any benefit upon dissolution of the corporation to inure to any member or any individual having a personal or private interest in the affairs of the corporation. Furthermore, the deed conveying the 185 acres to the corporation provides that the conveyance is "for the purpose of making available to grantee a site upon which to construct, operate and maintain recreational facilities."

Baywood cites *Blocker v. State* for the proposition that "the acceptance of such assets from donors established a charitable trust for the declared purposes as effectively as though the assets had been accepted subject to an express limitation providing that the gift was held in trust solely for such charitable purposes." *Blocker*, 718 S.W.2d at 415. Thus, it is Baywood's contention that the *cy pres* doctrine applies if the Club is dissolved, and the 185 acres deeded to BCC from Humble Oil and Refining Company, or proceeds from the sale of such property, must be used for similar recreational purposes rather than to inure to the sustaining members.

In *Blocker*, the Houston Conservatory of Music (HCM) was a non-profit corporation and its Articles of Incorporation stated that it "shall be maintained and operated strictly for the purpose of teaching the Youth of this land music and its allied arts." 718 S.W.2d at 411. Thus, its charitable identity was

---

5. *Cy pres* authorizes a court in equity to effectuate the general charitable purpose of a donor when his particular intention can no longer be carried out, whereupon the court can direct the gift to be used in a similar charitable manner as near the donor's intent as possible. *Blocker v. State*, 718 S.W.2d 409, 411 n. 1. (Tex.App.— Houston [1st Dist.] 1986, writ ref'd n.r.e.)

"permanently and irrevocably established." *Id.*; *Lightfoot v. Poindexter*, 199 S.W. 1152, 1167 (Tex.Civ.App.—Austin 1917, writ ref'd). The court in *Blocker* concluded, "that property transferred unconditionally to a non-profit corporation, whose purpose is established as or determined to be a public charity or an educational facility, is nevertheless subject to implicit charitable or educational limitations *defined by the donee's organizational purpose....*" *Blocker*, 718 S.W.2d at 415 (emphasis in original).

HCM was considered a charitable entity for purposes of *cy pres* because HCM was established as a *public* charity that had an *indefinite number of beneficiaries* (the youth of this land). In this case, property was not transferred to a public charity or educational facility as defined by BCC's organizational purpose. BCC's original Articles of Incorporation provided:

> This corporation is organized to support and maintain bicycle clubs, and other innocent sports, to-wit: swimming, fishing, hunting, skeet shooting, hiking ... and to acquire, maintain and provide by purchase, erection or otherwise suitable real estate, buildings or other facilities *for the conduct of said corporation's business.*

(Emphasis added.)

Furthermore, the 185-acre conveyance was not for the benefit of indefinite beneficiaries. It was for the benefit of the members of the corporation, including:

> those persons who are hereinabove named as directors, and those persons who are employees or annuitants or who are Commission Agents of Humble Oil & Refining Company or its affiliates, and who shall from time to time be admitted to membership in the corporation in accordance with bylaws to be adopted by the directors. In addition, the directors may, in accordance with the bylaws, admit to Associate Membership in the corporation those persons (not employees, annuitants, or Commission Agents) who were members in good standing as of July 1, 1954, in the Baytown Country Club.

Thus, the transfer was made to a purely private entity rather than to a public organization. Therefore, the *cy pres* doctrine does not apply. *See Powers v. First Nat'l Bank of Corsicana*, 138 Tex. 604, 161 S.W.2d 273, 283 (1942). We overrule Baywood's third point of error.

Accordingly, we affirm the trial court's judgment.

HUTSON–DUNN and O'CONNOR, JJ., also sitting.