**Craig DICKEY and Brenda Dickey, Appellants,**

v.

**CLUB CORPORATION OF AMERICA and Richardson Club, Inc. d/b/a Canyon Creek Country Club, Appellees.**

No. 05–99–00486–CV.

Court of Appeals of Texas, Dallas.

Feb. 16, 2000.

Stephen Gardner, Law Office of Stephen Gardner, Dallas, for Appellants.

Jim (James) Jordan, Mark M. Donheiser, Munsch, Hardt, Kopf & Harr, P.C., Dallas, for Appellees.

Before Justices WHITTINGTON, WRIGHT, and BRIDGES.

## OPINION

Opinion By Justice WRIGHT.

Craig Dickey and Brenda Dickey appeal the summary judgment granted in favor of Club Corporation of America and Richardson Club, Inc. d/b/a Canyon Creek Country Club.[1] In two issues, the Dickeys contend generally that the trial court erred by granting the Club's motion for summary judgment and by failing to sustain their objections to the Club's summary judgment evidence. We overrule the Dickeys' issues and affirm the trial court's judgment.

### Factual and Procedural Background

In 1990, the Dickeys joined Canyon Creek. Canyon Creek is one of many clubs owned and operated by Club Corporation of America. The Dickeys purchased a resident (full golf) family membership. Directly above the signature line on the membership agreement signed by Craig Dickey is the following statement: "The Undersigned agrees to conform to and be bound by the Bylaws and Rules and Regulations of [Canyon Creek], as they may be amended from time to time."

At the time the Dickeys joined Canyon Creek, the bylaws provided that women could not obtain tee times before 1:00 p.m. on Saturdays and holidays, between 12:00 noon and 2:00 p.m. on Fridays, or before 10:00 a.m. on Sundays. Men could not obtain a tee time on Thursday mornings. In 1992, this policy was somewhat relaxed and women were allowed to obtain tee times on Sunday and Friday mornings. In

1996, the bylaws were amended to provide for the "gold/silver policy." This policy does not contain the previous gender restrictions. Rather, it provides that each family must designate a gold member and a silver member. Only gold members may obtain tee times before 11:30 a.m. on Saturdays. Only silver members may obtain tee times before 12:30 p.m. on Thursdays. The only exception to this rule occurs when the course is reserved for special events such as golf tournaments. When the gold/silver policy was implemented, Canyon Creek informed its members by letter that each family was to designate a gold and silver member. The letter stated that, in the absence of a written designation, Canyon Creek would automatically designate the person in whose name the family membership was held as the gold member. The letter also stated that the designation may be changed by submitting the proper form.

In 1998, the Dickeys sued the Club for breach of contract and deceptive trade practices. The Dickeys claimed the Club breached its contract with them because the gold/silver policy in the bylaws conflicts with the membership agreement, which provides their joint membership is not divisible. According to the Dickeys, they are unable to play golf together on Saturday mornings under the terms of the gold/silver policy; therefore, one of the Dickeys is not entitled to the same privileges as the other and the bylaws have changed the meaning of "joint membership." Further, the Dickeys alleged that the Club had engaged in deceptive trade practices because the Club's actions were false and misleading. The Dickeys claimed that in 1996, when the gold/silver policy was implemented, the Club misrepresented that the membership agreement between it and the Dickeys allowed it to "unilaterally [change] . . . the meaning of a joint membership."

---

1. For convenience, we will refer to Richardson Club, Inc. as Canyon Creek and to Club Corporation of America and Canyon Creek collectively as the Club.

The Club filed a motion for summary judgment. In its motion, the Club alleged that it was entitled to summary judgment because: (1) the Dickeys agreed to be bound by the bylaws and rules and regulations of the Club; (2) the Dickeys' claims are barred by limitations; (3) the Dickeys ratified the rule that is the basis of their claim; (4) the Club never misrepresented the rules that were in effect at the time the Dickeys joined the Club; (5) the Dickeys have not suffered any damages as a result of any act by the Club; (6) the Club is a private club and the courts should not interfere with how it chooses to manage its affairs; and (7) because the Dickeys continued to use the Club and enjoy its services for eight years after they learned of the complained-of rule, they are estopped from asserting their claims. The Dickeys responded by arguing that: (1) the statute of limitations does not apply to their breach of contract claim because the contract is akin to a lease, and a new breach occurs each Saturday when the Dickeys are not allowed to play golf together; (2) the membership agreement does not permit the Club's actions because the agreement does not allow the bylaws to fundamentally change the nature of the membership; (3) because the Club is not a private, non-profit club, it is not free from judicial scrutiny; (4) the representation by the Club that it had the right to unilaterally change the membership agreement by enacting the gold/silver policy was an illegal misrepresentation within the scope of the Texas Deceptive Trade Practices Act (DTPA); and (5) the doctrines of ratification and estoppel do not apply under these facts because the Dickeys protested the policy as soon as they discovered it and have continued to work against it the entire time they have been members of the club. The Dickeys also objected to the Club's summary judgment evidence.

After a hearing, the trial court granted the Club's motion for summary judgment without specifying the grounds upon which it based its ruling. The trial court also denied the Dickeys' objections to the Club's summary judgment evidence. This appeal followed.

## Discussion

■ We review a summary judgment *de novo* to determine whether a party's right to prevail is established as a matter of law. *Foreness v. Hexamer*, 971 S.W.2d 525, 527 (Tex.App.-Dallas 1997, pet. denied), *cert. denied*, 525 U.S. 904, 119 S.Ct. 240, 142 L.Ed.2d 197 (1998). In doing so, we apply well-known standards. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ Summary judgment for a defendant is proper only when the defendant negates at least one element of the plaintiff's theory of recovery or pleads and conclusively establishes each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Once the defendant produces evidence entitling it to summary judgment, the burden shifts to the plaintiff to present evidence creating a fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996). When, as here, the trial court does not specify the basis for its ruling, an appellant is required to show that each of the independent grounds asserted in support of summary judgment was insufficient to support the judge's ruling. *Orozco v. Dallas Morning News*, 975 S.W.2d 392, 394 (Tex. App.-Dallas 1998, no writ).

## Summary Judgment Evidence

Before addressing whether the trial court erred by granting the Club's motion for summary judgment, we must examine the Dickeys' claim that the Club's summary judgment evidence was improper. As part of its supporting summary judgment evidence, the Club presented the affidavit of Ross Thornbrugh, Canyon Creek's general manager. In his affidavit, Thornbrugh stated that he had personal knowledge of the facts contained in the affidavit. Thornbrugh also stated that he is the general manager of Canyon Creek.

The Dickeys contend that although Thornbrugh's affidavit contains a "rote recital that it was made on personal knowledge," the facts contained within the affidavit show that to be untrue. According to the Dickeys, Thornbrugh did not become the general manager until September 1993, and thus he cannot have personal knowledge of any facts that occurred prior to that time.

We agree with the Dickeys that, to be sufficient, an affidavit must in some way affirmatively show how the affiant became personally familiar with the facts. *See* TEX.R. CIV. P. 166a(f); *Jackson T. Fulgham Co. v. Stewart Title Guar. Co.*, 649 S.W.2d 128, 130 (Tex.App.-Dallas 1983, writ ref'd n.r.e.). However, Thornbrugh's unchallenged statement that he is the general manager for Canyon Creek is sufficient to show how he learned of the facts about the Club contained in his affidavit. *See Jackson T. Fulgham*, 649 S.W.2d at 130. The fact that Thornbrugh was not employed by the Club at the time the Dickeys joined the Club in 1990 does not disqualify his knowledge of the Club's bylaws at that time. During employment, an employee may gain personal knowledge of regulations or procedures that were instituted prior to the time he was hired. *See Waite v. BancTexas-Houston*, 792 S.W.2d 538, 540 (Tex.App.-Houston [1st Dist.] 1990, no writ). Thornbrugh's affidavit makes clear that as general manager, he is knowledgeable of Canyon Creek's policies and bylaws because one of his duties is to make recommendations to the Board of Governors concerning changes in the bylaws. Thus, we conclude the trial court did not err by overruling the Dickeys' request to strike the affidavit. We overrule the Dickeys' second issue.

## The Club's Motion for Summary Judgment

In their first issue, the Dickeys contend generally that the trial court erred by granting the Club's motion for summary judgment on their claims for breach of contract and for deceptive trade practices. Under this issue, the Dickeys set forth the same arguments raised in their response to the Club's motion. We will address each of the causes of action in turn.

### 1. Breach of Contract

In its motion for summary judgment, the Club asserted, among other things, that it was entitled to judgment as a matter of law on the Dickeys' breach of contract claim because as a private club, it has the right to make internal rules and regulations and to manage its affairs without judicial interference.

Traditionally, courts are not disposed to interfere with the internal management of a voluntary association. *Harden v. Colonial Country Club*, 634 S.W.2d 56, 59 (Tex.App.-Fort Worth 1982, writ ref'd n.r.e.). By becoming a member, a person subjects himself, within legal limits, to the organization's power to make and administer its rules. *Id.* Thus, courts will not interfere with the internal management of voluntary associations so long as the governing bodies of those associations do not substitute legislation for interpretation and do not overstep the bounds of reason or violate public policy or the laws of the state. *See Burge v. American Quarter Horse Ass'n*, 782 S.W.2d 353, 355 (Tex.App.-Amarillo 1990, no writ); *Butler v. Hide-A-Way Lake Club, Inc.*, 730 S.W.2d 405, 410 (Tex.App.-Eastland 1987, writ ref'd n.r.e.); *Harden*, 634 S.W.2d at 59; *Adams v. American Quarter Horse Ass'n*, 583 S.W.2d 828, 834 (Tex.Civ.App.-Amarillo 1979, writ ref'd n.r.e.); *Hoey v. San Antonio Real Estate Bd.*, 297 S.W.2d 214, 217 (Tex.Civ.App.-San Antonio 1956, no writ); *Brotherhood of R.R. Trainmen v. Price*, 108 S.W.2d 239, 241 (Tex.Civ. App.-Galveston 1937, writ dism'd). Judicial review is only proper when the actions of the organization are illegal, against some public policy, arbitrary, or capricious. *Butler*, 730 S.W.2d at 410; *Harden*, 634 S.W.2d at 60.

■ The Dickeys respond that these cases are distinguishable and the doctrine of non-intervention should not apply in this case because these cases involve non-profit organizations and Canyon Creek is owned and operated by Club Corporation, a for-profit organization. We disagree. The summary judgment evidence shows that Canyon Creek, although owned and operated by a for-profit corporation, is nevertheless a social club with a voluntary, restricted membership. Canyon Creek's facilities are available only to its members and their guests, not to the public at large.[2] Thus, we conclude that the policy of judicial non-intervention applies as well to Canyon Creek as to any of the private, voluntary organizations in the cases relied on by the Club.

■ The Dickeys make the conclusory statement that their "valuable property rights and civil rights are at risk because of the unilateral actions of the [Club];" however, the Dickeys do not specify what rights are at risk. Membership in a golf club is not a "valuable property right," and the involvement of a property right alone does not necessarily authorize judicial intervention in the absence of arbitrariness, fraud, or collusion. *See Harden,* 634 S.W.2d at 59. With respect to the Dickeys' civil rights, the Dickeys have not alleged gender inequity or discrimination.[3] Their sole complaint is that they are not allowed to play golf together on Saturday mornings. If the courts were to intervene each time members of a golf club felt that restrictions on tee times were unreasonable, operation of such clubs would become unmanageable and valuable judicial resources would be wasted. *See Harden,* 634 S.W.2d at 60. We conclude that the Dickeys' claim is absent evidence of fraud,

illegality, or that the Dickeys' valuable property rights or civil rights are in jeopardy. Thus, the doctrine of judicial non-intervention applies, and the Dickeys' claim that Canyon Creek's bylaws violate their contractual rights under the membership agreement is not subject to our review. By voluntarily becoming members of Canyon Creek and agreeing to be bound by its bylaws, the Dickeys subjected themselves to the Club's power to make and administer its rules. In the absence of any allegations of fraud, illegality, or violation of public policy, their complaint of breach of contract is not subject to our review, and we conclude the trial court properly granted summary judgment on the cause of action for breach of contract.

## DTPA

With respect to the Dickeys' DTPA claim, the Club asserted, among other things, that it was entitled to summary judgment because it had not committed any deceptive acts or practices. According to the Club, the Dickeys' DTPA claim is merely a claim for breach of contract and without more, does not constitute a false, misleading, or deceptive act. We agree.

■ The Dickeys concede that a "mere breach of contract" does not make a deceptive trade practice. *See Crawford v. Ace Sign, Inc.,* 917 S.W.2d 12, 14 (Tex. 1996). However, the Dickeys argue their claim is more than a mere breach of contract, because of the "illegal misrepresentation" by the Club that it had the right to unilaterally change its membership agreement by enacting the gold/silver policy. The Dickeys do not dispute that they were aware that the membership agreement provided the bylaws could be amended. Thus, this argument is simply recasting

**2.** From time to time the facilities may also be used to host golf tournaments or other special functions.

**3.** To the contrary, in their brief the Dickeys explained that they had determined that they did not have a cause of action for gender discrimination and, thus, have "not sued on

constitutional or discrimination grounds. Instead, [we] have simply sued for breach of contract, because the Club never gave them the joint membership they bought, and for deceptive trade practices, because the Club deceived them about their rights and its responsibilities under that membership."

the same complaint. The "misrepresentation" alleged by the Dickeys is nothing more than a complaint about the Club's ability to make and enforce rules governing the use of tee times at Canyon Creek. Because the Dickeys have alleged nothing more than a breach of contract claim, we conclude the trial court properly granted summary judgment on the Dickeys' DTPA cause of action. *See id.* We overrule the Dickeys' first issue.

Accordingly, we affirm the trial court's judgment.